**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JAMIE BUDZINSKI,

    Plaintiff,                               CIVIL ACTION NO. 14-CV-13705

vs.

                                               MAGISTRATE JUDGE MONA K. MAJZOUB

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT [20] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT [22]**

Plaintiff Jamie Budzinski seeks judicial review of Defendant the Commissioner of Society Security's determination that he is not entitled to Social Security benefits for his physical impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 20) and Defendant's Motion for Summary Judgment (docket no. 22). With consent of the Parties, this case has been referred to the undersigned for final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Docket no. 19.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Opinion and Order.

**I.    Procedural History**

Plaintiff initially filed an application for Disability Insurance Benefits on April 9, 2007, alleging that he had been disabled since May 30, 1987, due to degenerative disc disease. (*See* TR 34, 36.) The Social Security Administration denied benefits, and Plaintiff requested a *de novo*

1

hearing, which was held on October 5, 2009, before Administrative Law Judge (ALJ) Michael Wilenkin, who subsequently found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 34-39.) The Appeals Council declined to review the ALJ's decision, and Plaintiff commenced an action for judicial review in this Court. (*See* TR 386-410.) On March 1, 2012, Magistrate Judge Michael Hluchaniuk entered a Report and Recommendation, recommending that the Court remand this matter for "further vocational evidence." (*Id.*)

Judge David M. Lawson adopted this recommendation, and on remand, the matter was resubmitted to ALJ Wilenkin for further consideration. (*See* TR 325.) The ALJ held a second hearing in this matter on March 14, 2013, after which the ALJ again determined that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 325-331. The Appeals Council again declined to review the ALJ's decision, and Plaintiff commenced the instant action for judicial review. After some procedural abnormalities related to Plaintiff's prior counsel (*see* docket nos. 11, 12, 13, 16, 17, and 21; *see also* Administrative Order Nos. 15-AO-033 and 15-AO-045), the parties then filed their instant Motions.

## II. Plaintiff's Testimony and the Medical Evidence of Record

Plaintiff (docket no. 20 at 11-12), Defendant (docket no. 22 at 10-11), and the ALJ (TR 329) each set out a factual recitation with regard to Plaintiff's hearing testimony. Likewise, Defendant (docket no. 22 at 7-10) and the ALJ (TR 329-30) each discuss the relevant portions of Plaintiff's medical record. Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies between

these recitations of the record. Therefore, the Court will incorporate these factual recitations by reference and will include any comments and citations as necessary throughout this Opinion and Order.

### III.    Administrative Law Judge's Determination

The ALJ found that Plaintiff met the insured status requirements of the act "at all times pertinent through September 30, 1993 but not thereafter." (TR 327.) He found that Plaintiff had not engaged in substantial gainful activity from May 30, 1987, through his date last insured; that claimant suffered from severe degenerative disc disease of the lumbar spine with disc herniation at L4-5; and that Plaintiff's impairments did not meet or equal those listed in the Listing of Impairments. (TR 327-28.) The ALJ then found that Plaintiff's allegations regarding the extent of his symptoms were not wholly credible and that Plaintiff had the Residual Functional Capacity to perform unskilled light work except he was "restricted to limited twisting of less than 1/3 of a day."[1] (TR 328-29.)

The ALJ then determined, in reliance on the VE's testimony, that Plaintiff was capable of performing work as an assembler, an inspector, or a packager. (TR 330-31.) The ALJ noted that there "would have been approximately 18,000 such jobs existing in the Metropolitan Detroit Area and roughly 36,000 such jobs existing in the State in 1993." (TR 331.) The ALJ found that Plaintiff was not disabled under the Social Security Act from May 30, 1987, through September 30, 1993. (TR 331.)

---

[1] This RFC finding is the same as the ALJ's initial RFC finding in 2009, at which time he found that Plaintiff had the RFC to "perform light work as defined in 20 CFR 404.1567(b) except See Sr. Sperl." (TR 36.) Dr. Sperl is Plaintiff's treating physician; the ALJ adopted Dr. Sperl's findings from the 1990s, noting that "he only restricted the claimant to limited bending and twisting and lifting no more than 25 pounds." (TR 37.)

3

**IV.     Vocational Expert Testimony**

In 2009, the ALJ initially held that "if the claimant had the residual functional capacity to perform the full range of light work, . . . a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.17."  (TR 38.)   He then noted that "the additional limitations had little or no effect on the occupational base of unskilled light work."  (TR 38.)   Thus, the ALJ held, Plaintiff was "not disabled."   As noted, though, this matter was remanded for further vocational evidence regarding Plaintiff's limitations because the ALJ's discussion "simply did not expressly address how his finding that plaintiff had a limited ability to twist affected the occupational base for light work."   (TR 404.)

On remand, the ALJ first asked the VE whether she was familiar with the usual, customary demands of work at the light exertional level.   The VE testified that she was.   He then asked the VE whether she could discuss what role twisting of the torso would play in the performance of work at the light exertional level.   The VE testified that it would be difficult without referring to any particular type of work because "all the jobs are different."   (TR 348.)

The ALJ then asked the VE to assume that by "limited twisting," he meant "that perhaps that means less than a third of the day," and he asked her "what, if any, impact would that have on the performance of . . . light unskilled work."  (TR 348-49.)   The VE testified:

> In my opinion that would probably limit it to work that's normally performed at a bench, like a light industrial work, where you're not moving around a lot for the nature of your job.   You're standing, but you're basically working with something that's in front of you.

(TR 349.)   She noted that "[e]xamples at the light level would be like an assembler, packager, or inspector, where everything's on a table in front of you."  (TR 349.)

Next, the ALJ asked the VE to estimate the number of such jobs that would have existed in

4

the State of Michigan in September of 1993. The VE testified that it "would obviously clearly be an estimate," but today, there are 3,000 assembler positions, 2,000 inspector positions, and 2,000 packager positions in the Detroit Metropolitan Area, with approximately 6,000, 4,000, and 3,000 such jobs (respectively) statewide. (TR 349.) The ALJ follow this statement by noting, "So roughly 12,000 today in the metropolitan Detroit Area." (TR 349.) The VE answered "Yes," and then testified that there would have been at least 50% more of the same jobs in 1993. (TR 350.) The ALJ then commented, "Probably somewhere in the neighborhood of 18.000 in the metropolitan area and 36,000 in the state of Michigan," to which the VE responded "Yes." (TR 350.)

Plaintiff's counsel then questioned the VE, asking whether any jobs existed for an individual who had to be absent from work two or more days per month or who "was required to have a sit, stand, or lie down option." The VE testified that there would be no such jobs. (TR 350-51.)

**V.      Law and Analysis**

    **A.      Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*,

305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

    **B.**    **Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past

work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C.     Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should be remanded because (1) the ALJ erred when he failed to ask the VE for DOT

7

numbers for the jobs set forth in her testimony; (2) the ALJ erred when he failed to question the VE regarding any possible conflicts between her testimony and the DOT; and (3) the ALJ did not properly assess Plaintiff's credibility. (Docket no. 20.)

### 1. The ALJ's Failure to Request DOT Numbers and Question the VE Regarding Possible Conflicts

Plaintiff primarily takes issue with the ALJ's questioning of the VE during his March 14, 2013 hearing. Specifically, Plaintiff asserts that by failing to ask the VE for DOT numbers related to the jobs enumerating during her testimony, the ALJ implicitly failed in his duty to determine if the VE's testimony was consistent with the DOT in accordance with SSR 00-4p. Moreover, Plaintiff contends, the ALJ exacerbated this problem when he failed to include any DOT numbers in his written decision and when he failed to ask the VE whether her testimony was consistent with the DOT. (Docket no. 20 at 12-15.)

Defendant argues that a lack of DOT codes in the VE's testimony is harmless error where the claimant's attorney does not raise the issue at the hearing and where the claimant has failed to specify any prejudice. (Docket no. 22 at 14-15.) Defendant then lists a myriad of possible DOT codes associated with jobs that could have fallen under the jobs identified by the VE. (*Id.* at 15.) Defendant further asserts that Plaintiff's argument fails because his attorney did not question the VE with regard to the source of her information and because the VE may rely on the DOT and the VE's own experience when testifying. (*Id.* at 15-17.)

"'[N]othing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.'" *Wilson v. Comm'r*, No. 10-13828, 2011 WL2607098, *6 (E.D. Mich. July 1, 2011) (Cohn, J.) (quoting *Martin v. Comm'r*, 170 F. App'x 369, 374 (6th Cir. 2006)). And as Defendant argues, even where

8

an inconsistency may exist and where there is a failure to provide DOT codes, "the ALJ [is] within his rights to rely on the VE's testimony because the Social Security regulations do not require the VE to rely on classifications in the DOT." *Wilson*, at *6 (citing *Conn v. Sec'y of HHS*, 51 F.3d 607, 610 (6th Cir. 1995)). That is, where inconsistencies may exist, if Plaintiff's attorney has a full and fair opportunity to cross examine the VE and does not do so, the ALJ is not required to assume that a conflict may exist.

Nevertheless, the ALJ's failure to question the VE, on the record, with regard to the source of her information gives the Court pause. SSR 00-4p explicitly holds that "[a]t the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency." SSR 00-4p. Moreover, the ALJ compounded his failure to question the VE with regard to the source of her testimony by stating the following in his written decision:

> Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT), with the exception of testimony regarding the number of jobs existing in 1993. Testimony regarding same is based on the vocational expert's experience.

(TR 331.) The VE made no such statement. Therefore, the Court could remand this matter to determine whether the VE's testimony was consistent with the DOT.

The Court recognizes that "[i]t is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Wilson*, 378 F.3d at 545; *see also* 5 U.S.C. § 706(2)(D) ("The reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . without observance of procedure required by law.") But the decisions of administrative agencies are always reviewed for harmless error. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir.2001). "No principle of administrative law or common sense requires [a reviewing court] to

9

remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989). And "[w]hen 'remand would be an idle and useless formality,' courts are not required 'to convert judicial review of agency action into a ping-pong game.'" *Kobetic v. Commissioner of Social Security*, 114 Fed. Appx. 171, 173 (6th Cir.2004), quoting *NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969). As Defendant points out, Plaintiff's argument relies on the ALJ's failure to inquire into the source of the VE's testimony, not on any actual inconsistency with the DOT. To the contrary, Defendants point to a non-exclusive list of 14 light- and sedentary-level jobs that would be consistent with the VE's testimony and Plaintiff's work capabilities. Remand in this matter would amount to nothing more than a useless formality. Accordingly, the Court will deny Plaintiff's Motion with regard to the VE's testimony.

### 2. The ALJ's Credibility Determination

As a secondary position, Plaintiff argues that the ALJ failed to properly assess his credibility. (Docket no. 20 at 15-19.) In support of this argument, Plaintiff points to medical evidence supporting his subjective complaints. Defendant argues that the ALJ properly considered Plaintiff's credibility and that Plaintiff's ability to point to evidence in support of his complaints is inapposite. (Docket no. 22 at 17-21.) The Court agrees.

"An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's

credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); s*ee also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

The ALJ found that Plaintiff was not entirely credible, primarily based on a lack of medical evidence supporting his allegations. The ALJ noted that all of the records provided by Plaintiff are from after his date last insured and that Plaintiff's primary physician, Dr. M.G. Sperl, only restricted Plaintiff to "limited bending and twisting an lifting no more than 25 pounds," with a

11

"passing reference to a so-called sit/stand option." (TR 37.) Likewise, Plaintiff's argument relies entirely on medical records that Plaintiff contends support his complaints. (Docket no. 20 at 16-19.) But even if the Court would find differently, the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen*, 800 F.2d at 545. Plaintiff has not persuaded the Court that such interference is appropriate here.[2]

Accordingly, **IT IS ORDERED**, that Plaintiff's motion for summary judgment [20] is **DENIED** and that Defendant's motion for summary judgment [22] is **GRANTED**.

Dated: February 12, 2016     s/ Mona K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Order was served upon Counsel of Record on this date.

Dated: February 12, 2016     s/ Lisa C. Bartlett
                              Case Manager

---

[2] Addtionally, Plaintiff's substantive positions with regard to the ALJ's RFC determination, particularly with regard to Dr. Sperl's opinion, were addressed by Magistrate Judge Hluchainuk and Judge Lawson when this matter was before the Court in 2012. (TR 405.) Although now characterized as a credibility argument, the Court finds no reason to reach a different conclusion.